**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ALVIN BOONE, BRANDON HESTER, | ) | |
| LINDSEY QUISENBERRY, | ) | |
| TAMMY PARKHILL, SUSAN CHRISTNER, | ) | |
| individually, as well as on behalf of all other | ) | |
| persons similarly situated, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| VS. | ) | Case No. 21-3229-SEM-TSH |
| | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES, ILLINOIS DEPARTMENT OF | ) | |
| VETERAN AFFAIRS, ILLINOIS DEPARTMENT | ) | |
| OF JUVENILE JUSTICE, ILLINOIS | ) | |
| DEPARTMENT OF CENTRAL MANAGEMENT | ) | |
| SERVICES, ILLINOIS DEPARTMENT OF | ) | |
| PUBLIC HEALTH, and JAY R PRITZKER, | ) | |
| in his official capacity as GOVERNOR OF | ) | |
| THE STATE OF ILLINOIS, | ) | |
|     Defendants. | ) | |

**AMENDED VERIFIED CLASS ACTION COMPLAINT
FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT
INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES**

COMES NOW Plaintiffs, ALVIN BOONE, BRANDON HESTER, LINDSEY

QUISENBERRY, TAMMY PARKHILL, SUSAN CHRISTNER, individually, as well as on

behalf of all other persons similarly situated, by and through their attorney, Bethany D. Hager,

Esq., pursuant to Fed. Rule Civ. Proc. 81(c)(1) and Fed. Rule Civ. Proc. 15(a)(1), (2), and request

leave to file the following Amended Verified Class Action Complaint for Temporary Restraining

Order, Preliminary and Permanent Injunctive Relief, Declaratory Relief, and Damages against

Defendants, ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC"), ILLINOIS

DEPARTMENT OF HUMAN SERVICES ("IDHS"), ILLINOIS DEPARTMENT OF

VETERAN AFFAIRS ("IDVA"), ILLINOIS DEPARTMENT OF JUVENILE JUSTICE ("IDJJ"), ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES ("ICMS"), ILLINOIS DEPARTMENT OF PUBLIC HEALTH ("IDPH"), and JAY R PRITZKER, in his official capacity as GOVERNOR OF THE STATE OF ILLINOIS ("Pritzker").

Plaintiffs have notified Defendants of the proposed amended filing and Defendants do not object to the proposed amended filing. No hearings have been held in this matter; and Defendants have not filed any response to Plaintiffs' original pleadings or motions in this matter. No party will be prejudiced by the filing of this amended Verified Complaint.

For their Amended Verified Complaint, Plaintiffs hereby allege as follows:

## PARTIES

1.      Plaintiffs are adult individuals employed, either directly or via agency contract, by IDOC, IDHS, IDVA, ICMS, and IDJJ, in congregate care facilities operated by those agencies.

2.      Defendants IDOC, IDHS, IDVA, IDJJ, ICMS, and IDPH, are executive branch agencies of the State of Illinois.

3.      Defendant, Pritzker, is the current Governor of the State of Illinois.

4.      Plaintiffs are currently facing substantial change to the terms of their employment, including prolonged unpaid suspension or termination of employment, solely due to not agreeing to be vaccinated or submit to testing for Covid-19.

## CLASS DEFINITION

5.      Plaintiffs request certification of a class action under Federal Rules of Civil Procedure 23(a) and (b).

6.      Plaintiffs seek to represent a class of other adult individuals who are employed, either directly or via agency contract, by IDOC, IDHS, IDVA, ICMS, and IDJJ, in congregate care

facilities operated by those agencies, and who have a moral objection to being vaccinated or submit to testing for Covid-19.

7.     The number of adult individuals who are employed, either directly or via agency contract, by IDOC, IDHS, IDVA, ICMS, and IDJJ, in congregate care facilities operated by those agencies, is estimated to be more than 5,000 individuals.[1]

8.     The number of adult individuals who are employed, either directly or via agency contract, by IDOC, IDHS, IDVA, ICMS, and IDJJ, in congregate care facilities operated by those agencies, and who have a moral objection to being vaccinated or submit to testing for Covid-19, is over 600 persons. (See Exhibit A)

9.     Because the proposed class is more than 600 persons, and possibly more than 5,000 persons, the number of putative class plaintiffs is so numerous that joinder of all members is impracticable.

10.     Whether employees or contracted employees can be required to submit to a vaccine or a medical test as a condition of their continued employment, without a lawful order of quarantine or isolation from the local health department, is a question common to all putative class Plaintiffs.

11.     This common question controls the outcome of this matter and, therefore, predominates over any questions affecting only the individual plaintiffs named specifically herein.

12.     The representative parties are adult individuals who are employed either directly or via agency contract, by Defendants IDOC, IDHS, IDJJ, ICMS, or IDVA, in congregate care facilities operated by those agencies.

---

[1] https://www2.illinois.gov/veterans/about-us;
https://www2.illinois.gov/idjj/Documents/September%202021%20Monthly%20Report.pdf;
https://www.dhs.state.il.us.

13.     The representative plaintiffs will fairly and adequately protect the interest of the class.

14.     Moreover, no class member will be prejudiced in this cause as each class member can merely choose to voluntarily submit to vaccination or testing, regardless of whether an order of quarantine or isolation might issue against them by the local health department.

15.     The class action is an appropriate method for the fair and efficient adjudication of the controversy, as the outcome will be controlled by a central legal question common to all putative class members.

## FACTUAL BASIS

16.     On or about September 16, 2021, Defendants IDOC, IDHS, IDVA, IDJJ and ICMS notified Plaintiffs that Defendants were implementing a mandatory Covid-19 vaccination policy (the "Policy") by which employees whose positions require them to work in congregate care facilities operated by IDOC, IDJJ, IDHS, and IDVA would be required to receive the first shot of a two-shot vaccine or one shot of a one-shot vaccine by October 14, 2021. (See Exhibit B)

17.     The Policy has since been updated to state that employees would be required to receive the first shot of a two-shot vaccine or one shot of a one-shot vaccine by October 26, 2021. (See Exhibit C)

18.     The Policy states that affected employees who refuse to receive a Covid-19 vaccination and fail to submit proof of vaccination, or who fail to submit a completed exemption form by the timeframes outlined in the Policy, shall be subject to progressive discipline up to and including suspension and discharge. (See Exhibit B)

19.     Employees who refuse to receive a Covid-19 vaccination for any reason, are currently facing progressive discipline beginning as early as November 9, 2021.

20.     The Policy states that affected employees may be exempted from the Covid-19 vaccination policy if they present documentation of a medical contraindication for receiving the vaccine, or maintain sincerely held religious beliefs, practices or observances that prohibit vaccination. (See Exhibit B)

21.     The Policy further states that employees exempted from the vaccination, even for sincerely held religious beliefs, practices or observances that prohibit vaccination, shall undergo regular Covid testing and ensure that appropriate documentation of same is regularly submitted. (See Exhibit B)

22.     Defendants have set forth a form for the "Request of Religious Exemption from Covid-19 Vaccination" (the "Form") and stated that Plaintiffs are required to use only this Form to submit their request to be exempted from the Policy for reasons of sincerely held religious beliefs, practices, or observances that prohibit vaccination. (See Exhibit D)

23.     The Form asks the individual submitting a request for religious exemption from Covid-19 vaccination to "Please identify your religion and state the religious principles that guide your objection to immunization. Generally, this means a sincerely held set of moral convictions that arise from your belief in and relation to God, or which, though not so derived, arise from a place in your life parallel to that filled by God among individuals who adhere to religious faiths. Please include at minimum the following information detailing why you are seeking this exemption: what tenet or belief your religion holds that prevents you from getting the Covid-19 vaccination; and whether you are opposed to all immunizations, and if not, the religious basis on which you object to COVID-19 immunizations. The more information and documentation you can provide, the better we will be able to evaluate your request." (See Exhibit D)

24.    The Form requires the individual submitting a request for religious exemption from Covid-19 vaccination to "affirm that the above information I have provided is complete and accurate. I understand that, if granted an exemption, I must comply with the mitigation measures required of me by the State of Illinois and my employing agency. Such measures include but are not limited to: participating in periodic COVID-testing at a frequency determined by the agency, providing proof of COVID testing, wearing face masks (including N95, KN95, and surgical masks) and maintaining certain physical distancing as determined by the agency. I understand that I may be required to curtail certain activities if the agency determines that participation of unvaccinated individuals presents an unreasonable risk to the facility. I understand that my request for an exemption may not be granted or may be modified or rescinded to minimize the risk to the facility. I understand that any intentional misrepresentation contained in this request may result in disciplinary action up to and including discharge." (See Exhibit D)

25.    Defendants stated that employees who submitted the required CMS religious exemption form would receive notification of its acceptance or denial within ten (10) days of submitting the form. (See Exhibit D)

26.    Employees who have submitted the required CMS religious exemption form, have not in fact received notification of acceptance or denial within ten (10) days of submitting the form.

27.    Employees who have submitted the required CMS religious exemption form have, instead, received an email stating "additional information is needed to process the Religious Exemption Request to CMS" and requesting documented history of religious exemptions to vaccinations, verified religious affiliation with a religious group who's tenants [sic] oppose vaccine or medical procedures; proof or prior conduct with a religious opposition to medicines that

used fetal cells in their research, testing, or development, documented history of vaccination and/or refusal." (See Exhibit E)

28.    Defendants have made known their intent to lay-off, reassign, or suspend employees who do not submit to vaccination on or before October 26, 2021. (See Exhibit F, Layoff Discipline Notice; and Exhibit G, FAQs regarding Leave of Absence Discipline)

29.    Defendants have stated that staff are "to have received at least 1 (one) of a 2 (two) shot vaccine or 1 (one) of a 1 (one) shot vaccine no later than October 26, 2021. It is vital that we, as a Department, utilize a standardized referral form for the employees who refuse the vaccination. Attached is the form we are requiring you to utilize in the event that you have staff that are not vaccinated as of the October 26th date." (See Exhibit F)

30.    Defendants have stated that "the discipline track for failure to vaccinate is a 10 day suspension, 20 day suspension, then be place on a non paid leave of absence for up to 6 months." (See Exhibit G)

31.    Defendants have stated that "unvaccinated employees continue to be a substantial burden on the state." (See Exhibit H)

32.    Regular Covid testing is not required of employees who receive the Covid-19 vaccine.

33.    Defendants have stated to Plaintiffs that the Policy is being compelled upon them by an executive order from the Governor.

34.    Plaintiffs are not required to vaccinate for any other infectious disease as a condition of their employment.

35.    The only disease for which Plaintiffs are required to test as a condition of their employment is tuberculosis. See, 77 Ill. Admin. Code 696.130.

36.    At this time, Plaintiffs are not positive for Covid-19 or any other infectious disease, and are not currently exhibiting any symptoms consistent with the Covid-19 virus or any other infectious disease.

37.    Plaintiffs object to being vaccinated or tested for Covid-19 as it violates their moral consciences.

38.    Plaintiffs are willing to abide by protections that have been demonstrated to protect against Covid-19, namely, self-monitoring for symptoms, wearing a mask when appropriate, voluntary reporting of potential symptoms, and reasonable testing requirements. These mechanisms provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

39.    Being vaccinated or tested for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they, competent adults, do not believe are medically necessary.

40.    Being vaccinated for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they reasonably believe relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses.

41.    Requiring only unvaccinated persons to submit to testing for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of health care choices made pursuant to freedom of conscience.

42.    The vaccines available to Plaintiffs have only had emergency use authorization for

less than one year.[2]

43.     The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiffs, be given the right to accept or refuse administration of the product.

44.     The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[3] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[4] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[5]

45.     Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[6] Thus, it is not clear when (or if) any Illinois State employee will have access to the "approved" COMIRNATY vaccine, leaving all employees who may elect to receive the "Pfizer" vaccine pursuant to the mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

46.     On August 23, 2021, the United States Food and Drug Administration issued two

---

[2] https://www.dph.illinois.gov/covid19/vaccination-plan
[3] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.
[4] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.
[5] Id. at 3 n.10 (emphasis added).
[6] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, supra note 2 at 2.

separate letters pertaining to two separate COVID-19 vaccines. (See, Exhibit I, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021); Exhibit J Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).)

47.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. J, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

48.    The Pfizer Letter also makes clear that there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine. (Pfizer Letter at 2 n.9.)

49.    Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine as granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA).")

50.    Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendants (or any other entity) from making the COVID-19 vaccines mandatory.

51.    All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

52.    On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

53.    There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

54.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

55.    Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval.

56.    The Emergency Use Authorization Fact Sheets for all three COVID- 19 vaccines state that it is the individual's right to refuse administration of the vaccine.

57.    According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, based on reported numbers, is 98.40%.[7]

58.    According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, when adjusted for unreported cases, is 99.36%.[8]

59.    According to the IDPH, the survival rate of all persons who have contracted Covid-

---

[7] https://covid.cdc.gov/covid-data-tracker/#datatracker-home
[8] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (this CDC report adjusts the reporting based on asymptomatic cases which never get reported to government agencies.)

19 in Illinois, based on reported number, is 98.46%.[9]

60.    According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, when adjusted for all unreported Covid cases, is 99.52%.[10]

61.    Each of the Plaintiffs are healthcare or correctional officers, or other similar staff, who provide valuable medical care and supervision in congregate care facilities throughout this state on a daily basis.

62.    Mass suspension or termination of employees such as Plaintiffs could in and of itself create a crisis of safety and health in the congregate care facilities of this state.

63.    Mass suspension or termination of employees such as Plaintiffs will cause incalculable and irreparable harm to Plaintiffs and their families, namely, jeopardizing Plaintiffs' ability to provide for their families and avoid homelessness, lack of medical care, lack of food and shelter, disrupted education for children, financial hardship or ruin, and harms to physical, mental and emotional health.

64.    Plaintiffs have been working to protect the public and persons in congregate care facilities during the whole pandemic without issue for over 1.5 years, all the while unvaccinated.

65.    Several courts in Illinois and throughout the nation have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Jane Doe et. al. v. Northshore University Health System*, Case No. 2021 CV 05683 (US Dist. Court, Northern District of Illinois) (granting TRO under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Illinois Health Care Right of Conscience Act); *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate*

---

[9] https://www.dph.illinois.gov/covid19/covid19-statistics
[10] https://www.dph.illinois.gov/covid19/covid19-statistics

*Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure t o grant religious exemptions and noting that "Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation." (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021)(allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights." (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was

not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

## JURISDICTION AND VENUE

66.    This action was originally filed in Illinois State Court, Adams County, as 2021 MR 219; and was removed to this Honorable Court by Notice of Removal filed by the Office of the Illinois Attorney General on or about October 26, 2021.

67.    This action, as amended herein, arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3 and 42 U.S.C. § 2000e, *et seq*.

68.    This Court has jurisdiction over this action, as amended herein, pursuant to 28 U.S.C. §§1331, 1343, and 1367.

69.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

70.    This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

71.    This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure and Title VII of the Civil Rights Act of 1964, §2000e, *et seq*.

72.    This Court is authorized to grant Plaintiffs' prayer for relief regarding damages, pursuant to Rule 54 of the Federal Rules of Civil Procedure and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981a and §2000e, *et seq*.

## RELEVANT LEGAL AUTHORITY

73.     The State has "important and legitimate interests in . . . protecting the health of the pregnant woman and in protecting the potentiality of human life." *June Medical Services L.L.C. v. Russo*, 591 U.S. ___ (2020) (Roberts, J., concurring) (citing *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 875-876 (1992) (plurality opinion)

74.     The State has an interest in protecting the life of the unborn. *Casey*, 505 U.S. at 873.

75.     As a matter of public policy, "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

76.     As a matter of public policy, the right to bodily self-determination is recognized as constitutionally protected by the right to privacy. See, *Eisenstat v. Baird*, 405 U.S. 438, 453 (1972). See also, *Olmstead v. U.S.*, 277 US 438, 478 (1928) (Brandeis, J., dissenting) (the right to have one's private life protected from government interference is described as "the right to be let alone-the most comprehensive of rights and the right most valued by civilized man.")

77.     "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).

78.    "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." 42 U.S.C. §2000e-5(g).

79.    "[S]ubject to the provisions of this section, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use." 21 U.S.C. §360bbb-3(a)(1) (the "Emergency Use Authorization Statute," or "EUA Statute.")

80.    As part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered, be given the option to accept or refuse administration of the product. Specifically:

81.    "With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following . . . Appropriate conditions designed to ensure that individuals to whom the product is administered are informed — (I) that the Secretary has authorized the emergency us of the product; (II) of the significant known potential benefits and

risks of such use, and of the extent to which such benefits are unknown; and (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.  21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

## COUNT I
## DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES TITLE VII, 42 U.S.C. § 2000e, et seq.

82.     The Plaintiffs restate and incorporate by reference Paragraphs 1 through 81 as though fully set forth herein.

83.     The Plaintiffs have a right to insist they not be compelled to be vaccinated or to submit to testing for Covid-19 unless the same be authorized by law.

84.     Defendants rely upon an executive order of the Governor as authority which compels them to require Plaintiffs to be vaccinated or subject themselves to invasive testing for Covid-19.

85.     Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs.

86.     Plaintiffs hold sincere religious beliefs that preclude them from receiving a Covid-19 vaccine.

87.     Plaintiffs informed Defendants of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

88.     Nonetheless, the Defendants have, under color of law, adopted policies which mandate Plaintiffs to become vaccinated or submit to invasive testing.

89.     Defendants have failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs.

90.     Defendants' failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiffs.

91.     Plaintiffs have filed and are filing charges with the EEOC complaining of these discriminatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. See e.g., *Sheehan v. Purolator Courier Corp*., 676 F.2d 877, 884 (2d Cir. 1981); *Drew v. Liberty Mut. Ins. Co*., 480 F.2d 69, 74 (5th Cir. 1973); *Bailey v. Delta Air Lines, Inc*., 722 F.2d 942, 944-45 (1st Cir. 1983).

92.     An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to vaccination or testing for the COVID-19 to allegedly prevent the spread of an infectious disease.

93.     An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

Wherefore, Plaintiffs, ALVIN BOONE, BRANDON HESTER, LINDSEY QUISENBERRY, TAMMY PARKHILL, SUSAN CHRISTNER, individually, as well as on behalf of all other persons similarly situated, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

**COUNT II**
**DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM**
**VIOLATES THE EMERGENCY USE AUTHORIZATION ACT,**
**21 U.S.C. §360BBB-3, et seq.**

94.     Plaintiffs restate and incorporate by reference Paragraphs 1 through 93 as though fully set forth herein.

95.     On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

96.     There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

97.     In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

98.     Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (Id.).

99.     Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine. (See Pfizer Letter at 6 ("There is no adequate, approved, and available alternative to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

100.     Thus, the only currently available COVID-19 vaccines are subject solely to EUA

approval and therefore cannot be mandated for use.

101.   The Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

102.   By imposing a Mandatory COVID-19 Vaccination Policy on Plaintiffs and refusing to grant Plaintiffs their requested religious exemption from such mandatory vaccination, Defendants are denying Plaintiffs their right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

103.   Defendants are violating the provisions of the Emergency Use Authorization Statute.

104.   Defendants are denying Plaintiffs their statutory rights under the United States Code and infringing upon the explicit protections outlined in the Emergency Use Authorization Statute.

105.   The vaccinations have been authorized for less than one year.

106.   The long-term effects for this vaccine are unknown.

107.   An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to health care services which are subject only to Emergency Use approval, in violation of Plaintiffs' moral conscience.

108.   An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

109.   Defendants' Policy has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm by denying them their statutory right to accept or refuse

administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

110.   Plaintiffs have no adequate remedy at law to prevent the ongoing deprivation of their statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute.

Wherefore, Plaintiffs, ALVIN BOONE, BRANDON HESTER, LINDSEY QUISENBERRY, TAMMY PARKHILL, SUSAN CHRISTNER, individually, as well as on behalf of all other persons similarly situated, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.   That the Court certify this action as a class action under Federal Rules of Civil Procedure 23(a) and (b).

B.   That the Court issue a Temporary Restraining Order restraining and enjoining Defendants, all their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice denying Plaintiffs their right to accept or refuse administration of the COVID-19 vaccines under the Emergency Use Authorization statute, or subjecting Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

C.      That the Court issue a Preliminary Injunction pending trial, and a Permanent Injunction upon judgment, restraining and enjoining Defendants, all their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Mandatory COVID-19 Vaccination Policy or any other written or unwritten policy or practice denying Plaintiffs their right to accept, or refuse administration of the COVID-19 vaccines under the Emergency Use Authorization statute, or subjecting Plaintiffs to discrimination for the exercise of their sincerely held religious beliefs against administration of the COVID-19 vaccines in violation of Title VII.

D.      That this Court render a Declaratory Judgment declaring that Defendants' Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Defendants, is illegal and unlawful under the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) and Title VII, 42 U.S.C. § 2000e, et seq. and further declaring that:

    a. by terminating Plaintiffs from employment with Defendants or by threatening to so terminate or remove Plaintiffs from their current positions, Defendants have unlawfully denied Plaintiffs their statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency Use Authorization; and

    b. by terminating Plaintiffs from employment with Defendants or by threatening to so terminate or remove Plaintiffs from their current positions, Defendants have unlawfully discriminated against Plaintiffs on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Title VII.

E.      That this Court award Plaintiffs and those similarly situated actual damages in an amount to be proven at trial (but not less than $300,000 each, as provided by 42 U.S.C. §1981a(a) and (b)), including those for pain and suffering, that Plaintiffs sustained as a result of Defendants' discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

F.      That this Court adjudge, decree, and declare the right and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

G.      That this Court retain jurisdiction over the matter for purposes of enforcing the Court's order.

H.      That this Court award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII of the Civil Rights Act.

I.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

By:     /s/ Bethany D. Hager
        Bethany D. Hager
        IL Bar Reg. No. 6301697
        Law Office of Bethany D. Hager
        Attorney for Plaintiffs
        917 North Walnut Street
        Danville, IL 61832
        Telephone: 217-497-3486
        bhagerlaw@gmail.com

## VERIFICATION

I, Alvin Boone, am over the age of eighteen years and am an employee of the State of Illinois in a congregate care facility. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 8, 2021          By:          /s/ Alvin Boone
                                             ALVIN BOONE

## VERIFICATION

I, Brandon Hester, am over the age of eighteen years and am an employee of the State of Illinois in a congregate care facility. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 8, 2021          By:          /s/ Brandon Hester
                                             BRANDON HESTER

## VERIFICATION

I, Lindsey Quisenberry, am over the age of eighteen years and am an employee of the State of Illinois in a congregate care facility. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 8, 2021          By:          /s/ LINDSEY QUISENBERRY
                                             LINDSEY QUISENBERRY

## VERIFICATION

I, Tammy Parkhill, am over the age of eighteen years and am an employee of the State of Illinois in a congregate care facility. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 8, 2021          By:          /s/ Tammy Parkhill
                                             TAMMY PARKHILL

## VERIFICATION

I, Susan Christner, am over the age of eighteen years and am an employee of the State of Illinois in a congregate care facility. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 8, 2021          By:          /s/ Susan Christner
                                             SUSAN CHRISTNER