## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ALVIN BOONE, BRANDON HESTER, LINDSEY QUISENBERRY, TAMMY PARKHILL, and SUSAN CHRISTNER, )<br><br>Plaintiffs, )<br><br>v. )<br><br>ILLINOIS DEPARTMENT OF CORRECTIONS, ILLINOIS DEPARTMENT OF HUMAN SERVICES, ILLINOIS DEPARTMENT OF VETERAN AFFAIRS, ILLINOIS DEPARTMENT OF JUVENILE JUSTICE, ILLINOIS DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, and JAY R. PRITZKER, in his official capacity as GOVERNOR OF THE STATE OF ILLINOIS,<br><br>Defendants. ) | Case No. 21-cv-3229-JES-JEH |

### ORDER AND OPINION

This matter is now before the Court on Defendants' Motions to Dismiss (Doc. 14 and 24), and Memoranda in support and Plaintiffs' Motion and Memorandum in Opposition (Doc. 17). For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part.

### BACKGROUND

On December 2, 2022, Defendants filed their initial motion to dismiss Plaintiffs' amended complaint and Plaintiffs responded with a Motion in Opposition (Doc. 17). On June 1, 2022, the Court entered a text order granting Plaintiffs' motion for leave to file a Second Amended Complaint on Plaintiffs' assertion that Defendants did not object. Defendants subsequently filed a Motion to Reconsider (Doc. 21), advising the Court that Plaintiff had asked

1

whether Defendants had an objection the same day they filed the motion for leave, without an opportunity for Defendants to respond or voice their objection. On July 11, 2022, the matter was heard before Magistrate Judge Jonathan Hawley. Judge Hawley denied the Motion to Reconsider, allowing to stand the Second Amended Complaint which requested a Temporary Restraining Order, Preliminary and Permanent injunctive Relief, Declaratory Relief, and money damages. Judge Hawley revived the parties' Motion to Dismiss and Response and gave Defendants leave to file a second Motion to Dismiss to address the three Counts added in the Second Amended Complaint. Defendants subsequently filed (Doc. 24), a Motion to Dismiss Counts III, IV and V of the Second Amended Complaint.

### FACTS

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015). Plaintiffs Alvin Boone, Brandon Hester, Lyndsey Quisenberry, Tammy Parkhill and Susan Christner, individually and on behalf of all others similarly situated, proceed on a Second Amended Complaint against their respective employers; the Illinois Department of Corrections ("IDOC"), the Illinois Department of Human Services ("IDHS"), the Illinois Department of Veterans' Affairs ("IDVA"), the Illinois Department of Juvenile Justice ("IDJJ"), the Illinois Department of Central Management Services ("IDCMS"), the Illinois Department of Public Health ("IDPH"); and against Illinois Governor J.B. Pritzker. Plaintiffs allege that pursuant to the Governor's various executive orders, the Defendant employers require that they be vaccinated against COVID-19 and submit to COVID-19 testing, in violation of their Constitutional rights and State statute.

Plaintiffs assert that they have sincerely held religious beliefs that prevent them from taking a vaccine which was derived, in whole or in part, from stem cells or other materials obtained from aborted fetuses. Plaintiffs also assert sincerely held beliefs of conscience which militates against participation in medical treatment which they believe ineffective and unnecessary. Plaintiffs assert that their employers' COVID-19 policies require them to receive a not-fully-authorized vaccine or risk losing their jobs. Plaintiffs admit that they have been offered a religious exemption, however, the exemption requests largely remain unresolved and so delayed as to be unavailable. Plaintiffs claim that even if the exemptions were granted, they would have to submit to periodic COVID-19 testing, which is also objectionable.

Plaintiffs assert that the Defendants' vaccination and testing requirements violate Title VII of the Civil Rights Act, the Emergency Use Authorization Act ("EUA"), the Illinois Religious Freedom Restoration Act ("IRFRA"), and the Free Exercise and Equal Protection clauses of the U.S. Constitution and Illinois constitution. Plaintiffs seek class certification under Fed. R. Civ P. 23(a) and (b), declaratory relief, preliminary and permanent injunctive relief, money damages, costs, and fees. Plaintiffs also seek a Temporary Restraining Order ("TRO") to enjoin Defendants from: enforcing mandatory COVID-19 vaccination policies, denying Plaintiffs' right to refuse administration of the COVID-19 vaccines under the EUA, and discriminating against Plaintiffs for the exercise of their sincerely held religious beliefs.

<u>Defendants' Motion to Dismiss (Doc. 14)</u>

Defendants first Motion to Dismiss addresses Plaintiffs' Count I Title VII claim, Count II Emergency Use Authorization claim, Plaintiffs' request for class certification, and asserts that Plaintiff Quisenberry and Defendant IDPH must be dismissed.

3

Defendants explain that Illinois has been in a declared state of emergency under the Illinois Emergency Management Agency Act since March of 2020.[1] On August 26, 2021, Governor Pritzker issued Executive Order ("EO") 87, and later, EO 88, requiring that State employees at State-operated congregate facilities, as well as contractors and vendors who spend significant time at those facilities, be vaccinated against COVID-19. Both Executive Orders expressly stated that this requirement was subject to union bargaining. The Defendants, with the exception of IDPH and Governor Pritzker, operate congregate facilities. These Defendants, pursuant to the Governor's directive, require COVID-19 vaccination or testing of all facility personnel, including those union personnel subject to the relevant collectively bargained agreement between the union and the State. Defendants deny violating Plaintiffs' state and federal rights, asserting that it is within the State's right as an employer to set the terms and conditions of employment. Defendants assert, further, that they have provided a reasonable accommodation, as employees with sincerely held religious beliefs and beliefs of conscience may request an exemption from the vaccine requirement although they would be subject to regular COVID-19 testing both while the exemptions are pending and later, if they are granted.

Defendants assert that Count I and II must be dismissed as premature as, while the religious exemptions remain pending, Plaintiffs Christner, Hester and Parkhill continue to work and are not required to be vaccinated. Defendants assert that Plaintiff Quisenberry is not employed by any of the State Defendants and not entitled to relief against them. The remaining Plaintiff, Boone, belongs to a bargaining unit with which the State has not reached an agreement so, currently, is not required to vaccinate. Defendants assert that these claims are premature for

---

[1] The Governor's latest COVID-19-related Order (EO 114), will remain in effect through December 9, 2022. https://coronavirus.illinois.gov/resources/proclamations.html (last visited November 14, 2022).

4

the additional reason that Plaintiffs did not first exhaust administrative remedies by filing a

Charge of Discrimination with the EEOC and receiving a Right to Sue letter.

Defendants assert, further, that Plaintiffs fail to establish a reasonable likelihood of

success on the merits, or irreparable harm, necessary for injunctive relief to issue. Defendants

point out that Plaintiffs' response, while addressing the elements of a motion to dismiss, is silent

as to the elements necessary to prevail on the TRO. Curiously, Defendants have done the

opposite, requesting a dismissal of the TRO and dismissal on the merits under Rule 12(b)(6),

while only citing the elements necessary for a TRO. Regardless, the Court has reviewed the

parties' briefings under both standards and has applied them in this Order.

Defendants also move to dismiss IDPH as a party where Plaintiffs had not alleged that it

employs any of the Plaintiffs or operates any Defendant congregate facility. Plaintiffs have not

responded, conceding the issue. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)

(finding that a litigant waives an issue raised in a motion to dismiss if he does not respond to it).

Accordingly, IDPH is dismissed as a party Defendant, without objection.

## MOTION TO DISMISS STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim

upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*,

570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge

must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,*

551 U.S. 89, 94 (2007); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept

factual allegations as true and draws all reasonable inferences in plaintiff's favor). A "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

## TRO STANDARD

Plaintiff has requested both a TRO and preliminary injunction, with the same standard applying to both. *Goodvine v. Gorske*, No. 06-862, 2007 WL 41947, at *9 (E.D. Wis. Jan. 5, 2007) (citing *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir. 1997). The principal difference is that a TRO may issue without notice to the party to be enjoined and may not last more than 14 days. Fed. R. Civ. P. 65(b)(2). On the other hand, a preliminary injunction will issue only after the adverse party has notice and an opportunity to respond. *Munson v. Shearing*, No.15-00062, 2015 WL 350661, at *5 (S.D. Ill. Jan. 27, 2015).

It has been established that "[a] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A., Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008). "A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If a plaintiff can establish these three requirements, then the court must consider the balance of the equities, "the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied." *Id*. at 895.

## ANALYSIS

I.   Count I - Title VII Claims

Plaintiffs bring a claim under Title VII of the Civil Rights Act which prohibits

discrimination by employers on the basis of race, color, religion, sex, or national origin. 42

U.S.C. § 2000e-2. "To make out a prima facie case of religious discrimination under Title

VII . . . a plaintiff 'must show that the observance or practice conflicting with an employment

requirement is religious in nature, that she called the religious observance or practice to her

employer's attention, and that the religious observance or practice was the basis for her discharge

or other discriminatory treatment.'" *Doe 1 v. NorthShore Univ. HealthSystem* ("*Northshore*"),

No. 21-05683, 2021 WL 5578790, at *3 (N.D. Ill. Nov. 30, 2021), *appeal dismissed,* No. 21-

3242, 2021 WL 8694063 (7th Cir. Dec. 16, 2021) (citing *Porter v. City of Chicago*, 700 F.3d

944, 951 (7th Cir. 2012). "[O]nce a plaintiff has established a prima facie case of religious

discrimination, the burden shifts to the employer to make a reasonable accommodation of the

religious practice or to show that any accommodation would result in undue hardship." *Villareal

v. Rocky Knoll Health Ctr.*, No. 21-729, 2021 WL 5359018, at *2 (E.D. Wis. Nov. 17, 2021)

(citing *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1575 (7th Cir. 1997)).

Here, Defendants offer a religious exemption which, if granted, will excuse Plaintiffs

from vaccination while requiring that they undergo regular COVID-19 testing. Plaintiffs'

objection to this is two-fold. First, they assert that this is not a reasonable accommodation as the

religious exemption is a sham where the requests remain pending, with no final decision in sight.

Plaintiffs' second objection is that if the exemptions are granted, they will be required to undergo

regular COVID-19 testing. Plaintiffs do not provide any detail as to the type of testing or identify

their objection to it. Defendants, for their part, reveal that some agencies, without specifying

which, test all employees regardless of vaccination status and that the IDVA tests all employees using an anterior nasal swab test which may be self-administered.

In support of their claim that the religious exemption is not a reasonable accommodation, Plaintiffs cite the *Northshore* case, asserting that there, the "refusal to acknowledge or honor its employees' request for religious exemptions *at all*, has been identified as actionable failures to reasonably accommodate religious observance or practice." (Doc. 17 at 4-5). In *Northshore*, the Defendant healthcare provider had made several COVID-19 policy changes before finally determining that exemptions would not be allowed, with the result that that all unvaccinated employees would be terminated on a certain date. In the case before the Court, however, religious exemptions are offered, although they remain pending and undecided. In the interim, however, Plaintiffs continue to work, subject to periodic testing.

At this point, the Court need not determine whether Plaintiffs have adequately pled the lack of a reasonable accommodation, as Defendants also argue that the claim is procedurally infirm. Defendants cite caselaw to support that one may not file a civil lawsuit for employment discrimination until he has first filed a charge of discrimination with the EEOC and obtained a right to sue letter. 42 U.S.C. § 2000e-16(c) ("Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies."). Here, Plaintiffs have pled that they "have filed and are filing charges with the EEOC," identifying an ongoing or contemplated action rather than a fait accompli.  As a result, it is clear that Plaintiffs did not fully exhaust prior to filing.

Plaintiffs respond, however, that "it is well-settled" that the Court may, under its equity jurisdiction, provide injunctive relief "even while their EEOC complaints are pending." (Doc. 17 at 6) (citing *Sheehan v. Purolator Courier Corp*., 676 F.2d 877, 884 (2d Cir. 1981); *Drew v.*

*Liberty Mut. Ins. Co.*, 480 F.2d 69, 74 (5th Cir. 1973); *Bailey v. Delta Air Lines, Inc.*, 722 F.2d

942, 944-45 (1st Cir. 1983)). As Defendants note, however, this issue is not as well-settled as

portrayed. Plaintiffs have cited cases from the First, Second, and Fifth Circuits while the Seventh

Circuits and others have not joined. Defendants also refer to the language of Title VII

§ 2000e-5(f)(2), which provides that only the EEOC and States' Attorneys General may move for

preliminary injunctive relief while an EEOC charge is pending. *See E.E.O.C. v. Chateau*

*Normandy, Inc.*, 658 F. Supp. 598, 602 (S.D. Ind. 1987) (discussing Title VII legislative history)

("The Senate amendment authorized the Commission or the Attorney General to seek

preliminary injunctive relief.")

There is no Seventh Circuit precedent which supports that this Court has the equitable

power to enjoin Defendants in the face of Plaintiffs' failure to exhaust administrative remedies.

On the other hand, there is precedent which supports that the Court may not act until all available

remedies are exhausted. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003) ("Title VII does not

authorize the filing of suit until the plaintiff has exhausted his administrative remedies . . . until

he has received a right-to-sue letter from the EEOC, signifying that the EEOC will not provide

him with any relief. If plaintiffs could sue before then, the time of the courts and of lawyers

would be wasted with cases that ended up being resolved or abandoned at the administrative

level."). The Court finds that Plaintiff's Title VII claim is procedurally premature, and it is

dismissed without prejudice to Plaintiffs reasserting, after exhausting administrative remedies.

Defendants further allege that Plaintiffs are not entitled to injunctive relief on the Title

VII claim as they cannot establish two of the required elements; a reasonable likelihood of

success on the merits and that they will suffer irreparable harm if a TRO is not granted.

Defendants assert there is no reasonable likelihood of success as Defendants have provided for a

reasonable accommodation in the form of a religious exemption. Defendants cite *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 273 (2d Cir. 2021), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021), and *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) where the Second Circuit reversed the district court's grant of injunctive relief. The court, considering plaintiffs' challenge to a statute which prohibited the employer offering a religious exemption, found that "a blanket religious exemption allowing [plaintiffs] to continue working at their current positions unvaccinated[.]" was not required under Title VII. *Id*. at *29. It found that a reasonable accommodation, not necessarily that preferred by the employee, was sufficient. "Once any reasonable accommodation is provided, the statutory inquiry ends." *Id*. at *29. While Plaintiffs claim that their requested exemptions were effectively in limbo, they, like the plaintiff in *Hochul*, continue to work, unvaccinated. As a result, plaintiffs fail to establish some likelihood of success on the merits for injunctive relief to issue.

Defendants also assert that Plaintiffs cannot establish irreparable harm as "loss of employment 'is not irreparable because it is fully compensable by monetary damages.' Indeed, 'permanent loss of employment, standing alone, does not equate to irreparable harm.'" *Northshore*, 2021 WL 5578790, at *8 (internal citations omitted). Here, too, Plaintiffs request money damages which, if granted, will make them whole. *See id*. at *8 (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1085–86 (7th Cir. 2008) ("Because a finding of irreparable harm is a prerequisite to the issuance of a preliminary injunction, Plaintiffs' motion must be denied.").

While waiting for a decision on their religious exemptions, Plaintiffs continue to be subject to mandatory nasal swab COVID-19 testing while vaccinated employees are not. Plaintiff asserts that this "discriminatory testing" is not a reasonable accommodation as it singles them out

and subjects them to a different set of requirements. While Plaintiffs allege that this conflicts

with their religious beliefs, they do not indicate the nature of the conflict, failing to identify any

religious tenet which is offended by this testing. *See Egelkrout v. Aspirus, Inc.*, No. 22118, 2022

WL 2833961, at *3 (W.D. Wis. July 20, 2022) (denying Title VII claim as to mandatory

COVID-19 testing where plaintiff did not identify "genuinely held religious beliefs" which were

in conflict with him the testing requirement).

As a result, Plaintiffs fail to establish enough to proceed with the merits of the TRO

based on the Title VII claim. The Court finds that, as Plaintiff's Title VII claim is procedurally

premature for failure to exhaust administrative remedies, it will be dismissed without prejudice.

II.  Count II - Emergency Use Authorization Claims

Federal law generally prohibits anyone introducing or delivering for introduction into

interstate commerce any "new drug" or "biological product" unless and until the United States

Food and Drug Administration ("FDA") has approved the drug or product as safe and effective

for its intended uses. *See* FDCA 21 U.S.C.A. § 355(a), 355 (5)(B)(ii). In February 2020, the

United States Department of Health and Human Services ("HHS") declared a public emergency

and instructed the FDA, under 21 U.S.C. § 360bbb-3,1, to grant emergency use authorization

("EUA") for "medical devices and interventions" to combat the pandemic, including

vaccines. *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1167 (D.N.M. 2021), *aff'd,* 21-2105, 2022

WL 2129071 (10th Cir. June 14, 2022).

Plaintiffs assert, however, that under the EUA they have the right to refuse administration

of a non-FDA-approved vaccine:

> With respect to the emergency use of an unapproved product, the Secretary, to the
> extent practicable given the applicable circumstances described in subsection
> (b)(1), shall for a person who carries out an activity for which the authorization is
> issued, establish such conditions on an authorization under this section as the

Secretary finds necessary or appropriate to protect the public health, including the following . . .

Appropriate conditions designed to ensure that individuals to whom the product is administered are informed— (I) that the Secretary has authorized the emergency us of the product; (II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and (III) of **the option to accept or refuse administration of the product,** of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) (emphasis added).

Plaintiffs claim that the currently available Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech vaccines have only been approved for emergency use and, under the EUA, they have the right to refuse them. While Plaintiffs acknowledge that the Pfizer COMIRNATY vaccine is fully approved FDA-approved,[2] they assert that it is not available in the United States and the available Pfizer/BioNTech vaccine is "distinct" from the COMIRNATY. Defendants dispute this, claiming that the Pfizer/BioNTech and COMIRNATY vaccines "have the same formulation" and are interchangeable; and the Pfizer/BioNTech vaccine is fully FDA-approved, save for those under 16 years of age, under the COMIRNATY name.

Plaintiffs disagree and have attached to the amended complaint, a September 22, 2021 letter from the FDA to Pfizer which stated "COMIRNATY (COVID-19 Vaccine, mRNA) is the same formulation as the Pfizer-BioNTech COVID-19 Vaccine and can be used interchangeably with the Pfizer-BioNTech COVID-19 Vaccines to provide the COVID-19 vaccination series." (Doc. 7 at 10-3). Plaintiffs allege that the fact that they have "the same formulation" and can be used "interchangeably" implies a difference. Accordingly, they insist that the only vaccines available in the U.S. remain authorized under the EUA which, by its terms, allows them to refuse it.

_____

[2] Plaintiffs provide an August 23, 2021 letter from the FDA to BioNTech Manufacturing GmbH approving the COMIRNATY vaccine. (Doc. 7 at 9).

The Court finds that there is clearly a dispute of fact as to whether the Pfizer-BioNTech COVID-19 Vaccine is merely a renamed FDA-approved COMIRNATY vaccine or separate and distinct, subject to the EUA. As a result, it finds that Plaintiffs have alleged enough at the pleadings stage to state a cognizable claim that the Pfizer/BioNTech vaccine is subject to the EUA. The Court now considers the second part of the argument, whether the EUA guarantees Plaintiffs the right to refuse vaccination.

In support, Plaintiffs refer to the language of the EUA to the effect that those to whom the vaccines are to be administered must be informed of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks. 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III). Defendants respond that this is unavailing to Plaintiffs as the EUA does not provide for a private right of action.

Defendants note that the EUA is enacted under the FDCA subject to enforcement "by and in the name of the United States" and that subject to certain conditions, "[a] State may bring in its own name and within its jurisdiction proceedings for the civil enforcement, or to restrain violations" of the FDCA. 21 U.S.C.S § 337(a), (b). *See Goodrich v. Good Samaritan Reg'l Health Ctr.*, No. 22-132, 2022 WL 1623648, at *2 (S.D. Ill. May 23, 2022) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [FDCA]. Because there is no private right of action to enforce the FDCA, Count II must be dismissed."). *See also, Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 817 (1986) (determining no federal subject matter jurisdiction over FDCA claim as "Congress has determined that there should be no private, federal cause of action for the violation . . .").

13

Plaintiffs nakedly assert that this argument is "beside the point." (Doc. 17 at 7), claiming

they cannot lawfully be compelled to receive an emergency use vaccine without the option to

refuse it. Even if the Court were to accept this argument and ignore that the EUA has no private

right of action, it does not find support that Plaintiffs have not been given the option to refuse the

vaccine. Plaintiffs clearly plead that they remain unvaccinated, and all, save Plaintiff Boone,

have submitted requests for the religious exemptions. As a result, they have that option.

If their exemptions are denied, they have the option of refusing the vaccine, though it will likely

cost them their jobs. As noted in *Villareal*, 2021 WL 5359018, at *2–3, this arrangement does

not run afoul of the EUA as Plaintiff have been "informed ... of the option to accept or refuse

administration of the product, of the consequences, if any, of refusing administration of the

product." *Id*. at *8-9 (finding that the EUA does not insure freedom from employer-mandated

vaccination programs). *See also Klaassen v. Trustees of Indiana Univ.*, 549 F. Supp. 3d 836, 895

(N.D. Ind. 2021), *vacated and remanded on other grounds,* 24 F.4th 638 (7th Cir. 2022)

(denying injunctive relief and finding that university vaccine mandate did not amount to "forced

vaccination.") ("[S]tudents have options—taking the vaccine, applying for a religious exemption,

applying for a medical exemption, applying for a medical deferral, taking a semester off, or

attending another university. . . .The court recognizes that for certain students this may prove a

difficult choice, but a choice nonetheless. The choice isn't so coercive as to constitute irreparable

constitutional harm.").

The Court finds that Plaintiffs have failed to successfully plead an entitlement to relief

under the EUA and this claim is dismissed on the merits. The Court also finds that Plaintiffs are

not entitled to a TRO based on the EUA as they fail to state a cognizable claim on which they

might have some likelihood of success. As this is Plaintiffs' third attempt, this claim is dismissed with prejudice.

III.    Plaintiff Lindsey Quisenberry

Defendants disallow any liability as to Plaintiff Quisenberry as she is not employed by a state actor but rather, a private contractor, Wexford Health Services, Inc. Defendants cite case-law which holds that a Plaintiff cannot maintain a Title VII action against a state agency when not employed by that state agency. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 380 (finding that an independent contractor could not maintain a Title VII action). Defendants note, while liability may exist where a state agency is a joint employer, with the right to control and direct the work, Plaintiffs have made no such allegations here.

Plaintiffs respond that, as Plaintiff Quisenberry's employer sent her to work in a state facility which has a vaccine mandate, she is entitled to recourse from Defendants. Defendants hold the opposite view, that if Plaintiff Quisenberry seeks recourse, she must get it from her employer, particularly as there is no claim that the State Defendants, rather than Wexford, is responsible for providing the religious exemption. Plaintiffs fail to cite any legal authority in response, offering only a brief and underdeveloped argument. Plaintiff Quisenberry is dismissed.

IV.    Class Certification

Defendants also object to the named Plaintiffs proceeding on their own behalf and on behalf of "all other persons similarly situated." *See* Fed. R. Civ. P. 23. Defendants assert that any request for class certification is premature and should be subject to discovery and briefing before ruling. *See Northshore*, 2021 WL 5578790, at *10 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) ("[class] certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'")). Defendants also

raise a typicality issue, asserting that an individual's religious beliefs are "inherently personal" and each request for religious exemption is necessarily fact specific, creating an obstacle to class certification. Plaintiffs do not address these arguments and the Court is persuaded that class certification should not be granted at this juncture.

**Defendants' Motion to Dismiss Counts III, IV, and V (Doc. 24)**

Plaintiffs subsequently filed a Second Amended Complaint where, in Counts I and II, they reassert claims nearly identical to those in Counts I and II of the amended complaint. The parties' prior briefing as to these Counts have been revitalized and considered by the Court, *supra*. Plaintiffs' Second Amended Complaint added three additional claims - Counts III, IV, and V. As previously noted, Defendants were given an opportunity to file a Motion to Dismiss as to these Counts, without a response by Plaintiffs.

Plaintiffs' Counts III, IV, and V challenge Public Act 102-667, codified at 745 ILCS 70/13.5. Public Act 102-667 is a recent, June 1, 2022, amendment to the Illinois HealthCare Right of Conscience Act ("HCRCA"), 745 ILCS 70/1 *et seq*. The amendment added language to the effect that measures to prevent the spread of COVID-19, taken by employers and others, was not a violation of the HCRCA. It is Plaintiffs' position that the carve-out to the HCRCA violates the Illinois Religious Freedom Restoration Act ("IRFRA"), Free Exercise Clause of the U.S. Constitution and Illinois constitution, and Equal Protection under the US Constitution and Illinois constitution. Plaintiffs request that the Court enjoin enforcement of the amended portion of the HCRCA.

In response, Defendants claim that their COVID-19 mitigation policies represent permissible terms and conditions of employment which do not violate State statute or Constitutional precepts. It is Defendants' position that Plaintiffs are not entitled to injunctive

relief under Counts III, IV and V, and the Counts should be dismissed with prejudice on the merits.

V.       Count III - IRFRA Violations

Plaintiffs assert that the Public Act 102-667 amendment to the Illinois Healthcare Right of Conscience Act should be stricken as a violation of Illinois Religious Freedom Restoration Act ("IRFRA"). The IRFRA provides, the "government may not substantially burden a person's exercise of religion ...unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling government interest." 775 ILCS 35/15. *Cassell v. Snyders*, 458 F. Supp. 3d 981, 999 (N.D. Ill. 2020), *aff'd,* 990 F.3d 539 (7th Cir. 2021). As noted, Plaintiffs assert that a recent amendment to the HCRCA violates the protections afforded under the IRFRA.

The HCRCA was originally enacted to prohibit employers discriminating against healthcare workers who refused to provide certain services due to reservations of conscience, such as pharmacists opposed to dispensing birth control or the Plan B "morning after" pill, 745 ILCS 70/5, *Menges v. Blagojevich*, 451 F. Supp. 2d 992, 999–1000 (C.D. Ill. 2006); or participating in abortion. *Nat'l Inst. of Family & Life Advocates v. Rauner*, No.16-50310, 2017 WL 11570803 at *1 (N.D. Ill. July 19, 2017) (citing 745 ILCS 70/2) ("The HCRCA was enacted in 1977 'to respect and protect the right of conscience of all persons who refuse to ... act contrary to their conscience or conscientious convictions in providing ... health care services and medical care.'")

The HCRCA shields health care providers who refuse to provide legal treatment options to which they had conscience-based objections from civil liability or professional

discipline. *Vandersand v. Wal-Mart Stores, Inc.*, 525 F. Supp. 2d 1052, 1056–57 (C.D.

Ill. July 31, 2007). It reads in relevant part:

> It shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any manner ... because of such person's conscientious refusal to ... perform, assist, ... or participate in any way in any particular form of health care services contrary to his or her conscience.
> 745 ILCS 70/5.

> The Right of Conscience Act defines "health care" and "conscience" as follows:
> (a) "Health care" means any phase of patient care, including but not limited to, testing; diagnosis; prognosis; ancillary research; instructions; family planning, counseling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures*;* medication; or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental wellbeing of persons;

> (e) "Conscience" means a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths;

745 ILCS 70/3(a), (e).

Plaintiffs note the provision that HCRCA safeguards extend to those who refuse to

participate in a "particular form of health care services contrary to his or her conscience." *Id*. at

70/5. They plead that the Public Act 102-667 amendment contradicts the stated public policy of

the HCRCA and violates the IRFRA as it forces them to choose between their religious and

conscientious beliefs and their employment.

The amendment provides:

> VIOLATIONS RELATED TO COVID-19 REQUIREMENTS.
> It is not a violation of this Act for any person or public official, or for any public or private association, agency, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. *This*

> *Section is a declaration of existing law and shall not be construed as a new enactment.* Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly. Nothing in this Section is intended to affect any right or remedy under federal law.

745 ILCS 70/13.5 (emphasis added).

Plaintiffs plead that the amendment violates the IRFRA as it places a substantial burden of their religious beliefs without a sufficiently compelling governmental interest and where there are less restrictive ways of furthering the governmental interest. Plaintiffs claim that the COVID-19 emergency is not sufficient to warrant the burdening of their religious beliefs; and that there are less restrictive means for accomplishing this same purpose.

Defendants deny that Public Act 102-667 abrogates HCRCA protections, claiming that it merely clarifies that the HCRCA was never intended to apply to COVID-19 mitigation measures. Defendants reference the "plain language" of the amendment itself which states that it is not to be construed as a new enactment, and that it merely clarifies the original intent without substantively changing it. *See* 745 ILCS/70/13.5, *supra*. At least one other court has considered this issue and made the same determination. *See Glass v. Dep't of Corr.*, No. 22-0270, 2022 WL 1223641, at *2, 2022 IL App 4th 220270 (finding that the amendment was merely an "extrinsic aid of construction," meant to clarify an ambiguity in the HCRCA, not a change in the law). *Id.* at ¶ 23-24.

Defendants also argue that Plaintiffs cannot proceed on a claim that the amendment extinguished an existing right under the HCRCA to refuse COVID-19-related measures. Defendants cite caselaw to support that the Court does not have the authority to enjoin Illinois from repealing its own laws, if Public Act 102-667 is construed as repealing a previously recognized statutory right. *See* (Doc. 25 at 5) (citing *Conant v. Walters*, 309 F.3d 629, 645-46

(9th Cir. 2002) ("preventing the state from repealing an existing law is no different from forcing it to pass a new one; in either case, the state is being forced to regulate conduct that it prefers to leave unregulated.").

While this argument might have merit, it presupposes that Plaintiffs have affirmatively pled that the amendment served to repeal the HCRCA, something not clear from the record. Plaintiffs have pled, however, that the amendment violates the IRFRA, an issue which Defendants do not address. The question remains whether Public Act 102-667, as applied, unnecessarily burdens Plaintiffs' religious beliefs and whether the same purpose could be accomplished by less restrictive means. Defendants offer the underdeveloped argument that there are no facts under which Plaintiffs could establish a substantial burden on their religion. The Court finds that an issue of fact remains, not to be decided on the pleadings.

The Court next considers Plaintiffs' TRO request based on the Public Act 102-667 amendment. While there is little caselaw on this issue, in the previously cited *Glass* case, the court found plaintiffs did not have a reasonable likelihood of success on the merits where the amendment was merely a clarification of existing law, denying injunctive relief. *Id*. at ¶ 23-24. The Court is persuaded that this is the case here as well, particularly given the legislative intent clearly specified in the language of Public Act 102-667. As a result, it does not find that Plaintiffs have a reasonable likelihood of success on the merits so that injunctive relief might issue. Still, the lack of a reasonable likelihood does not mean none, and an issue of fact remains. Defendants' motion to dismiss Count III is granted as to the requested TRO and otherwise denied.

VI.   Count IV - Violations of the Free Exercise Clause of the U.S. Constitution and Article I
      § 3 of the Illinois constitution

In Count IV, Plaintiffs plead that the Public Act 102-667 amendment to the HCRCA

violates the free exercise of their religion as guaranteed under the First Amendment and the

identical provision in Art. 1 § 3 of the Illinois constitution. Plaintiffs allege that the amendment is

neither religiously neutral nor generally applicable, which if true, would require that the

amendment survive strict scrutiny. *See Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 916–

17 (N.D. Ill. 2021) (citing *Employment Division v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108

L.Ed.2d 876 (1990), (neutral laws of general applicability that only incidentally burden religion

are not subject to strict scrutiny). In *Troogstad*, however, the court found otherwise, stating "this

Court must follow the dictates of the Seventh Circuit's ruling in *Klaassen*, which applied rational

basis review to *all* of the plaintiffs' claims against Indiana University's vaccine requirement,

including the free exercise claim. And, as the Court has repeatedly noted, the vaccine orders pass

the rational basis test." *Id.*  (citing *Klaassen*, 7 F.4th at 593). The "rational basis review is 'highly

deferential,' and to find that a government action lacks a rational basis in this context, a court

must find the action 'utterly lacking in rational justification'" *Id*. at 910-11 (citing *Brown v. City

of Mich. City,* 462 F.3d 720, 733 (7th Cir. 2006).

The court in *Troogstad* further determined that plaintiffs did not have a reasonable

likelihood of success on the merits as their religious exemptions had not been denied, but

determined incomplete in the documentation. *Id*. at 917 ("To be clear, if a particular employee is

denied a religious exemption, she may challenge that denial, based on the particular facts of her

case, as a violation of her free exercise rights. But no Plaintiffs have been denied a religious

exemption on grounds other than failing to adequately articulate their individual circumstances,

as the City Vaccination Policy requires."). This is similar to the situation at hand where Plaintiffs' requests remain pending, not denied.

Here, too, the Court determines that Plaintiffs do not have a reasonable likelihood of success on the free exercise claims, as identical COVID-19 measures have been found to pass a rational basis test *Troogstad*, 571 F. Supp. 3d at 911; and the requested exemptions have not been denied. As a result, the request for a TRO is denied. Still, there remains an issue of fact, whether likely to succeed or not, as to whether Public Act 102-667 has substantially burdened Plaintiffs' religious exercise. Defendants' motion to dismiss Count V is granted as to the TRO, but otherwise denied.

VII.    Violations of Equal Protection under the Fourteenth Amendment and Article I § 2 of the Illinois constitution

In Count V, Plaintiffs plead that Public Act 102-667 results in disparate treatment as it causes those with certain religious convictions to be treated less favorably, in violation of equal protection under the Fourteenth Amendment of the Constitution and Article I §2 of the Illinois constitution.[3] Plaintiffs claim that this disparate treatment does not serve a compelling interest and is not the least restrictive means to mitigate COVID-19 infection.

"The Equal Protection Clause of the Fourteenth Amendment provides that no state shall make or enforce a law that denies to any person within its jurisdiction the equal protection of the laws. . . .This is 'essentially a direction that all persons similarly situated should be treated alike.'" *Halgren v. City of Naperville*, 577 F. Supp. 3d 700, 751-52 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk v. Cook Cnty.*, 47 F.4th 587 (7th Cir. 2022). Defendants deny that Plaintiffs were similarly situated to others who received more favorable treatment. Defendants claim that

---

[3] The equal protection clause of the Illinois constitution is identical to and interpreted in lockstep with the U.S. Constitution's Fourteenth Amendment equal protection. *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673 ¶ 92.

all State employees are treated the same under the HCRCA and Public Act 102-667 amendment as all are required to adhere to COVID-19 mitigation policies.

In *Halgren*, the Seventh Circuit upheld the denial of injunctive relief to firefighters who had objected to COVID-19 vaccination requirements. The court applied the rational basis test, finding that plaintiffs were not members of a suspect class, and that the alleged deprivation did not involve a fundamental right. *Id*. at 753. The Court found that there was a rational basis for treating the vaccinated and unvaccinated differently and that "a law will pass constitutional muster even if 'it is not made with mathematical nicety or because in practice it results in some inequality.'" *Id*. at 753-54 (citing *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993)). *See also Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011) (finding, while "[t]he equal protection clause requires similar treatment of similarly situated persons; it does not require things which are different in fact or opinion to be treated in law as though they were the same.").

Defendants assert that while the HCRCA as amended, might have a disparate impact on those with particular religious beliefs, there is a rational basis for the differing treatment. Defendants note that the original intent of the HCRCA was to shield medical care providers from liability for refusing to provide care which violated their moral or religious scruples. Defendants asserts that the one-on-one situations between a patient and a provider have a negligible effect on public health compared to the public health effect of a world-wide pandemic. As a result, there is a rational basis for the disparate effect of the HCRCA on Plaintiffs and others similarly situated.

Plaintiffs have pled to the contrary, that the HCRCA amendment took them out of the protection of the HCRCA and disparately burdened their religious beliefs. As noted, the Court has previously determined that the Public Act 102-667 amendment was a clarification of the law and not a change in the law. The Court has also found, in the free exercise context, that the

23

amendment passes the rational basis test, at least in a TRO analysis. The Court does not find that Plaintiffs have a reasonable likelihood of success as to the equal protection claim and will not provide injunctive relief. *See DeSalle v. Wright*, 969 F.2d 273, 276 (7th Cir. 1992) ("The fact that a statute works a hardship on a particular individual does not make it unconstitutional."). While success does not appear likely, it is not completely foreclosed and there remains a factual issue as to whether the Public Act 102-667 amendment violates equal protection. Defendants' motion to dismiss Count V is granted as to the TRO and otherwise denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss (Doc. 14 and 24) are GRANTED in part and DENIED in part as follows:

1. Plaintiffs' request for a TRO and preliminary injunction as to the allegations of the Second Amended Complaint is DENIED.

2. The Count I - Title VII claim is DISMISSED without prejudice to Plaintiffs' reasserting after exhausting their administrative remedies;

3. The Count II - Emergency Use Authorization claim is DISMISSED with prejudice.

4. Lindsey Quissenberry is DISMISSED as a party Plaintiff;

5. IDPH is DISMISSED as a party Defendant;

6. Defendants' Motions to Dismiss Counts III, IV and V on the merits are DENIED.

Entered on this 18th day of November, 2022.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE